HON. ROBERT F. KELLY Chairman, New York State Commission on Cable Television
This is in response to the request by Thomas E. Ryan, Acting Counsel of the Commission on Cable Television, for my opinion as to whether the Commission, in performing its duty pursuant to section 822(3) of the Executive Law in approving rate amendments of cable television franchises between a municipality and a cable television company, is required to comply with the procedures and requirements of section 202(2) of the State Administrative Procedure Act (SAPA).
The State Administrative Procedure Act was enacted by Chapter 167, Laws of 1975 "In order to provide the people with simple, uniform administrative procedures * * *" in response to a legislative finding that "the administrative rule-making, adjudicatory and licensing processes among the agencies of state government are inconsistent, lack uniformity and create misunderstanding by the public" (SAPA, § 100).
Section 102(1) SAPA defines "Agency" as "any department, board, bureau,commission, division * * * of the state * * * authorized by law to make rules or to make final decisions in adjudicatory proceedings * * *." (Emphasis supplied.)
Section 102(2)(a)(ii) SAPA defines "Rule" as "the amendment, suspension, repeal, approval or prescription for the future of rates, wages * * *." (Emphasis supplied.)
Section 202(2) SAPA outlines the procedures for notice and publication of proposed agency action which an agency must follow "Prior to the adoption, amendment, suspension, or repeal of any rule * * *."
The Commission on Cable Television was created by Article 28 of the Executive Law and its purposes and duties are contained in Executive Law, §§ 811 et seq.
In order for a cable television company to operate, it must be franchised by the municipality in which it proposes to operate (Executive Law, § 819). The Commission must confirm the franchise by issuing a certificate of confirmation before the television company may exercise its franchise (Executive Law, § 821). The rates which a cable television company may charge for cable television service are specified in the franchise given to the company (Executive Law, §§ 819 and825[1]). In order for the rates to be changed, the franchise must be amended (Executive Law, § 825[2]).
Amendment of the franchise to effectuate a rate change must be given prior approval by the Commission (Executive Law, § 822[1]). The Commission must approve an application for an amendment of the franchise upon a showing of compliance by the applicant with certain rules and regulations (Executive Law, § 822[3]).
The inquiry states that the Commission does not participate in the negotiations that establish the rates in the original franchise nor in the negotiations that establish a rate increase in a franchise amendment. The Commission has a statutory duty to approve the proposed rate amendment unless there is a failure to comply with certain rules and regulations (Executive Law, § 822[3]).
However, it appears that it was the intent of the Legislature to encompass within the SAPA this type of rate approval activity by the Commission. Although the duty of the Commission in approving the rates is mandatory upon the compliance by the applicant with certain requirements, it is nevertheless the "approval * * * of rates * * *" within the definition of "Rule" (SAPA, § 102[2][a] [ii]), and therefore, the Commission must comply with the procedures of section 202(2) SAPA when it approves rate amendments.
Therefore, I conclude that the Commission on Cable Television, in performing its duty pursuant to section 822(3) of the Executive Law in approving rate amendments of cable television franchises between a municipality and a cable television company, is required to comply with the procedures and requirements of section 202(2) of the State Administrative Procedure Act. If you can support it with good and valid reasons, you may wish to sponsor legislation to exempt rate approvals by the Commission from the requirements of the Administrative Procedure Act.